ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| BRIAN BENOIT, por sí y en representación de PHASE ONE LLC<br><br>Parte Recurrida<br><br><br>v.<br><br><br>SIMON DAVID REYNOLDS, por sí y en representación de **HEMINGWAY SIGNATURE RESORT at RIO MAR LLC** y Fulano de Tal como posible persona de interés<br><br>Parte Peticionaria | TA2025AP00279 | *Apelación acogida como Certiorari,* procedente del Tribunal de Primera Instancia, Sala Superior de Fajardo<br><br>Caso Núm.: FA2024CV00777<br><br>Sala: 307<br><br>Sobre: Ejecución de Hipoteca, Propiedad Comercial Hipoteca, Cobro De Dinero Ordinario |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y la Jueza Prats Palerm.

Monge Gómez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 3 de septiembre de 2025.

Compareció ante este Tribunal la parte peticionaria, el Sr. Simon David Reynolds, en representación de Hemingway Signature Resort at Rio Mar LLC (en adelante, "señor Reynolds", "Hemingway" o el "Peticionario"), mediante un recurso de apelación presentado el 22 de agosto de 2025. Nos solicitó la revocación de la *Orden* emitida por el Tribunal de Primera Instancia, Sala Superior de Fajardo (en adelante, el "TPI"), el 23 de julio de 2025, notificada y archivada en autos el mismo día. A través de dicho dictamen, el TPI declaró "No Ha Lugar" una "**Moción en Solicitud de Relevo de Sentencia por Razón de Nulidad**" (en adelante, *Moción de Relevo de Sentencia*) presentada por el Peticionario.

Por los fundamentos que expondremos a continuación, se *expide* el auto de *certiorari*[1] y se *revoca* el dictamen recurrido.

---

[1] *Véase, Resolución emitida por este Tribunal el 27 de agosto de 2025.*

**I**.

El caso de autos se originó el 12 de agosto de 2024, con la presentación de una "**Petición**" *ex parte* por parte del Sr. Brian Michael Benoit, en representación de Phase One LLC (en adelante, "señor Benoit", "Phase One" o el "Recurrido"). A través de dicho escrito estableció que, el 31 de mayo de 2024, las partes suscribieron un pagaré con garantía hipotecaria por la suma de setenta y seis mil quinientos dólares ($76,500.00), incluyendo los intereses y cargos vencederos al 31 de julio de 2024. Sostuvo que, en esa misma fecha, las partes juramentaron ante el Notario Público, Jhansel Núñez Salcé, el documento titulado "**Demand for Consent Judgment**" (en adelante, *Sentencia por Consentimiento*). Por vía de dicho escrito, Hemingway reconoció la deuda antes mencionada, más un diez por ciento (10%) del préstamo por cargos en caso de incumplimiento y la radicación de un pleito ante el tribunal, para un monto total de ochenta y cuatro mil dólares ($84,000.00). Además, acordó firmar y ejecutar cualquiera y todos los documentos necesarios para asegurar el pago del préstamo recibido.

Según surge de los autos ante nuestra consideración, se estableció como plan de pago lo siguiente:

A. El demandado pagará el préstamo pendiente de la siguiente manera:

1. Pago del capital del préstamo y una tarifa del 10% para un monto total de $84,000.00.

2. El demandado asignará y transferirá a los demandantes, a la única discreción de estos últimos, el interés propietario del demandado equivalente a la mayoría de dicho interés, asegurando que dicha asignación y transferencia se ejecute en cumplimiento con todas las leyes y regulaciones aplicables y sea efectiva inmediatamente después de la ejecución. Esta asignación y transferencia será irrevocable y vinculante para el demandado y sus sucesores, cesionarios y representantes.[2]

A raíz del incumplimiento del Peticionario, y conforme a lo dispuesto en la Regla 35.4 de Procedimiento Civil, 32 LPRA Ap. V., R. 35.4, el TPI dictó una *Sentencia*, emitida el 3 de enero de 2025 y notificada el 9 de enero del mismo año. En esta reconoció la validez de la *Sentencia por*

---

[2] *Véase*, <u>SUMAC TPI</u>, entrada núm. 1, anejo III (traducción suplida).

*Consentimiento* firmada por las partes. Ergo, el juzgador de instancia resolvió y ordenó:

> 1. Que SIMON DAVID REYNOLDS, por sí y en representación de HEMINGWAY SIGNATURE RESORT at RIO MAR LLC ha incumplido con sus obligaciones contractuales recogidas en el Pagaré garantizado mediante la Escritura Número 23 sobre Hipoteca el 30 de mayo de 2024 ante el Notario Jhansel Núñez Salcé.
>
> 2. En virtud de su incumplimiento y como forma de satisfacer la deuda hipotecaria garantizada mediante la Escritura de Hipoteca número 23, otorgada el 30 de mayo de 2024 ante el Notario Jhansel Núñez Salcé, y por el "Consent Judgment" suscrito voluntariamente por la parte demandada, este Tribunal ORDENA la firma de cualquier documento público o privado que sea necesario para transferir el interés propietario de Hemingway Signature Resort at Rio Mar LLC, a favor de la parte demandante, BRIAN BENOIT, por sí y en representación de PHASE ONE LLC, en calidad de pago de la hipoteca adeudada, incluyendo todos los intereses acumulados a través de la Oficina de Aguaciles.[3]

Luego de varios trámites posteriores, el 22 de junio de 2025, el Peticionario presentó la *Moción de Relevo de Sentencia*, en la que alegó que el documento suscrito como *Sentencia por Consentimiento* era nulo *ab initio* ya que era contrario a la ley, la moral y al orden público. Se fundamentó en que la cláusula del pago por el incumplimiento sobrepasa el importe de la responsabilidad de pago, lo cual contraviene las disposiciones de la Regla 35.4 de Procedimiento Civil, *supra*.

Por su parte, el 23 de julio de 2025, el Recurrido presentó una "**Moción en Cumplimiento de Orden**" mediante la cual se opuso a la *Moción de Relevo de Sentencia*. En la misma estableció que este mecanismo procesal no se puede utilizar para reabrir controversias o para alegar cuestiones sustantivas que debieron ser planteadas mediante los recursos de reconsideración o apelación. Destacó que una sentencia se considera nula cuando es dictada sin jurisdicción o se quebranta el debido proceso de ley, por lo que no está disponible para corregir errores de derecho, apreciación o valoración de la prueba. Argumentó que la cláusula que el Peticionario señaló como abusiva fue objeto de negociación bilateral entre las partes.

---

[3] *Véase*, <u>SUMAC TPI</u>, entrada núm. 20, pág. 2.

Conforme a ello, el 23 de julio de 2025, el TPI emitió la *Orden* recurrida*,* en la que declaró "No Ha Lugar" a la *Moción de Relevo de Sentencia* presentada por el Peticionario.

Inconforme con lo anteriormente resuelto, Hemingway acudió ante este Tribunal mediante el recurso de epígrafe, en el que señaló los siguientes errores:

**A. PRIMER ERROR: ERR[Ó] EL TRIBUNAL DE PRIMERA INSTANCIA AL SOSTENER LA VALIDEZ DE UN CONTRATO OTORGADO EN CONTRA DE LA LEY Y EL ORDEN PÚBLICO.**

**B. SEGUNDO ERROR: ERR[Ó] EL TRIBUNAL DE PRIMERA INSTANCIA AL NO DECLARAR NULA LA SENTENCIA MEDIANTE LA CUAL CONFIERE UN REMEDIO QUE PRETENDE SUBSANAR LA SÚPLICA DE LOS DEMANDANTES A BASE DE UN CONTRATO NULO.**

**C. TERCER ERROR: ERR[Ó] EL TRIBUNAL DE PRIMERA INSTANCIA AL NO CONVERTIR EN ORDINARIO EL PROCESO DE EJECUCIÓN DE HIPOTECA Y COBRO DE DINERO EN UN PROCESO ANTE LA CONTROVERSIA DE HECHOS PRESENTADA EN EL PROCESO SUMARIO.**

**D. CUARTO ERROR: ERR[Ó] EL TRIBUNAL DE PRIMERA INSTANCIA AL DENEGAR LA NULIDAD DE UN CONTRATO CONTENIDO DE FORMA CONTRARIA A LO DISPUESTO EN LA REGLA 35.4 DE LAS DE PROCEDIMIENTO CIVIL.**

El 2 de septiembre de 2025, compareció Phase One mediante "**Alegato en Oposición a Solicitud de *Certiorari***"

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A.**

El auto de *certiorari* es el recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una decisión de un tribunal inferior. McNeil Healthcare v. Mun. Las Piedras I, 206 DPR 391, 403 (2021). "[L]a característica distintiva de este recurso se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos". Rivera et al. v. Arcos Dorados et al., 212 DPR 194, 209 (2023). Así, este solo se expedirá luego de justipreciar los criterios establecidos en la Regla 40 de nuestro Reglamento, 4 LPRA Ap. XXII-B, R.

40, y en aquellas instancias específicas que delimita la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1. A esos efectos, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, limita la autoridad de este Tribunal de Apelaciones para revisar las órdenes y resoluciones interlocutorias que dictan los tribunales de instancia por medio del recurso discrecional del *certiorari*. En lo pertinente, la precitada disposición reglamentaria, supra, dispone que:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable la justicia, al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. Íd.

Con el fin de que podamos ejercer de una manera sensata nuestra facultad discrecional de entender o no en los méritos de los asuntos que son planteados mediante el recurso, la Regla 40 de nuestro Reglamento, 4 LPRA Ap. XXII-B, señala los criterios que debemos considerar al atender una solicitud de expedición de un auto de *certiorari*. BPPR v. SLG Gómez-López, 213 DPR 314, 336 (2023). En lo pertinente, la precitada disposición reglamentaria establece lo siguiente:

El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari*, o de una orden de mostrar causa:

> A. Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos son contrarios a derecho.
>
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, *supra.*

Dentro de este marco, el análisis del foro apelativo intermedio -al momento de considerar los asuntos planteados mediante el recurso de *certiorari*- no se efectúa en el vacío ni se aparta de otros parámetros. Rivera et al. v. Arcos Dorados et al., *supra*, pág. 209; 800 Ponce de León v. AIG, 205 DPR 163, 176 (2020). Las delimitaciones que imponen estas disposiciones reglamentarias tienen como objetivo intrínseco prevenir la "dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación". Mun. Caguas v. JRO Construction, Inc., 201 DPR 703, 712 (2019). Nótese que, distinto al recurso de apelación, el auto de *certiorari*, por ser un recurso discrecional, debe ser utilizado con cautela y por razones de peso. Pueblo v. Díaz de León, 176 DPR 913, 918 (2009).

En ese sentido, el Tribunal Supremo de Puerto Rico reiteradamente ha indicado que la discreción significa tener el poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción. García v. Padró, 165 DPR 324, 334 (2005). El adecuado ejercicio de la discreción judicial está "inexorable e indefectiblemente atado al concepto de la razonabilidad". Pueblo v. Ortega Santiago, 125 DPR 203, 211 (1990). Así pues, un tribunal apelativo no intervendrá con las determinaciones discrecionales de un tribunal inferior, a no ser que las decisiones emitidas por este último sean arbitrarias o en abuso de su discreción. SLG Flores-Jiménez v. Colberg, 173 DPR 843, 865 (2008).

**B.**

Una sentencia dictada bajo la Regla 35.4 de Procedimiento Civil, *supra*, se conoce como "sentencia por confesión" o "sentencia por

consentimiento". J. Cuevas Segarra, <u>Tratado de derecho procesal civil</u>, 2<sup>da</sup> ed., San Juan, Pubs. JTS, 2011, T. III, pág. 1036. Ello, en virtud de las disposiciones contenidas en el referido cuerpo reglamentario, el cual expresamente dispone que:

> (a) Podrá dictarse sentencia sin la celebración de un juicio o sin haberse iniciado un pleito, fundada en el consentimiento de una persona con capacidad legal para obligarse, ya sea por dinero debido o que haya de deber o para asegurar a otra contra responsabilidades eventuales contraídas a favor de la parte demandada, o por ambas cosas, en la forma prescrita en esta regla. Una vez el tribunal pase juicio, la misma será registrada y notificada por el Secretario o Secretaria del tribunal y advendrá final y firme desde la fecha de su registro.
>
> (b) Dicho consentimiento deberá aparecer de un escrito firmado bajo juramento por la parte demandada, haciendo constar lo siguiente:
>
> (1) Su autorización para que se dicte sentencia en su contra por una suma determinada.
>
> (2) Si es por dinero debido o que haya de deberse, expondrá concisamente los hechos y el origen de la deuda, y demostrará que la suma consentida se debe o se deberá en justicia.
>
> (3) **Si es con el fin de garantizar a la parte demandante contra una responsabilidad eventual, expondrá concisamente los hechos constitutivos de la responsabilidad y demostrará que la suma consentida no excede el importe de la responsabilidad**. 32 LPRA Ap. V, R. 35.4 (énfasis suplido).

Surge claramente de la citada Regla que, mediante la figura de pronunciamiento de sentencia por consentimiento, las partes pueden finiquitar controversias, asumir responsabilidades y solicitarle al Tribunal que así lo reconozca, sin necesidad de diligenciar emplazamientos, celebrar un juicio en su fondo ni considerar mociones dispositivas. En ese sentido, el Tribunal Supremo ha expresado que la parte promovente tiene la obligación de cumplir cabalmente con los requisitos exigidos por la ley y las disposiciones aplicables, ya que, **la más leve desviación resultará en la invalidez de la sentencia**. <u>ELA v. Isla Verde Inv. Corp.</u>, 98 DPR 255, 259 (1970).

Cabe resaltar que ni la ley, ni el debido proceso de ley, requieren que el demandado sea emplazado antes de dictarse la sentencia. <u>Íd</u>., pág. 260. **Por ello, se ha establecido palmariamente que los requisitos procesales exigidos por la Regla deben cumplirse estrictamente**.

González v. López Quiñones, 46 DPR 843, 853 (1934). Esta realidad jurídica se traduce en que es responsabilidad del tribunal de cerciorarse que el acuerdo cumple con todos los requisitos que dispone la Regla 35.4 de Procedimiento Civil, *supra*, pues lo contrario podría suponer la desestimación de la causa de acción u ordenar que el pleito se tramite por la vía ordinaria. Cuevas Segarra, op cit., pág. 1037

Así pues, el dictamen así emitido será final y firme, por lo que se renuncia al derecho a apelar. Íd. Sin embargo, la parte no queda desprovista de un remedio, dado a que puede solicitar que, a discreción judicial, la sentencia se deje sin efecto. Siendo así, nuestra más alta curia resolvió que el mecanismo adecuado para atacar la validez de este tipo de dictamen es mediante el relevo de sentencia. ELA v. Isla Verde Inv. Corp., *supra,* pág. 260.

**C.**

La Regla 49.2 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R.49.2, dispone el mecanismo procesal que se tiene disponible para solicitar el relevo de los efectos de una sentencia adversa cuando esté presente alguno de las razones allí expuestas. El propósito de dicha Regla consiste en impedir que se frustren los fines de la justicia mediante tecnicismos y sofisticaciones. García Colón et al. v. Sucn. González, 178 DPR 527, 539 (2010). Este remedio permite al tribunal realizar un balance entre dos principios de cardinal importancia en nuestro sistema legal: (1) que todo litigio sea resuelto y tenga su conclusión y (2) que en cada caso se imparta justicia. Náter v. Ramos, 162 DPR 616, 624 (2004). En detalle, la referida Regla dispone que el tribunal puede relevar a una parte de una sentencia, orden o procedimiento cuando exista alguno de los siguientes fundamentos:

> (a) error, inadvertencia, sorpresa o negligencia excusable;
> (b) descubrimiento de evidencia esencial que, a pesar de una debida diligencia, no pudo haber sido descubierta a tiempo para solicitar un nuevo juicio de acuerdo con la Regla 48;
> (c) fraude (incluso el que hasta ahora se ha denominado "intrínseco" y el también llamado "extrínseco"), falsa representación u otra conducta impropia de una parte adversa;
> (d) nulidad de la sentencia;
> (e) la sentencia ha sido satisfecha, renunciada o se ha cumplido con ella, o la sentencia anterior en que se fundaba

ha sido revocada o de otro modo dejada sin efecto, o no sería equitativo que la sentencia continúe en vigor, o

(f) cualquier otra razón que justifique la concesión de un remedio contra los efectos de una sentencia. 32 LPRA Ap. V, R.49.2.

Para que proceda el relevo de sentencia bajo la antedicha Regla, es necesario que el peticionario justifique su solicitud amparándose en al menos una de las causales anteriormente mencionadas. García Colón et al. v. Sucn. González, *supra*, pág. 540. No obstante lo anterior, relevar a una parte de los efectos de una sentencia adversa es una decisión discrecional de los tribunales, excepto en los casos de nulidad o cuando la sentencia ya ha sido satisfecha. Náter v. Ramos, *supra*, pág. 624. **Así pues, nuestro Tribunal Supremo ha expresado que el precepto debe interpretarse de manera liberal y cualquier duda debe resolverse a favor de la persona que solicita que se deje sin efecto la sentencia, a fin de que el proceso continue y la controversia pueda resolverse en sus méritos**. García Colón *et al.* v. Sucn. González, *supra*, pág. 541. Es decir, este mecanismo procesal postsentencia no está disponible para alegar cuestiones sustantivas que debieron ser planteadas mediante los recursos de reconsideración y apelación. Íd.

**III**.

En el presente caso, el Peticionario nos solicitó la revocación de la *Orden* del TPI, a través de la cual declaró "No Ha Lugar" la *Moción de Relevo de Sentencia* que interpuso.

Por estar íntimamente relacionados los señalamientos de error, se abordarán de manera conjunta en la discusión. En síntesis, el señor Reynolds sostiene que el TPI erró al no dejar sin efecto la *Sentencia* emitida el 3 de enero de 2025 y al no reconocer que el contrato en el que se fundamentó su dictamen era nulo. Añadió que, ante esta controversia, el caso debió ser dilucidado mediante un procedimiento ordinario.

Por su parte, el Recurrido sostiene que la aludida *Sentencia* es final, firme e inapelable y que, por tanto, el recurso debe ser desestimado por tardío. Sostiene, además, que no medió perjuicio, parcialidad o error craso en la determinación impugnada que denegó el relevo de la *Sentencia*, toda

vez que el TPI se limitó a dar cumplimiento al acuerdo suscrito por ambas partes y que modificar el mismo es improcedente, pues los contratos válidamente otorgados son exigibles. De igual forma, arguye que se debe denegar la expedición del auto, puesto que el mecanismo del relevo de sentencia no constituye una llave maestra para eludir plazos fatales ni justificar la inacción procesal. Veamos.

Según explicamos previamente, la sentencia por consentimiento es un mecanismo procesal que permite a una parte reconocer que adeuda una suma determinada y, así, autorizar al tribunal a dictar sentencia en su contra. **Para que este acuerdo sea válido, es indispensable cumplir con varios requisitos estrictamente regulados**. En primer lugar, el consentimiento debe constar en un escrito firmado bajo juramento por las partes. Además, si se trata de una deuda existente o futura, el escrito debe exponer de forma clara y precisa los hechos y el origen de la obligación, demostrando que la suma reclamada es justa y adeudada. **Asimismo, en los casos en que el consentimiento tenga como propósito garantizar a la parte demandante una responsabilidad eventual, el escrito debe detallar los hechos que fundamenten dicha responsabilidad y <u>probar que la suma acordada no excede el importe de la obligación</u>**. Este procedimiento exige un cumplimiento riguroso de los requisitos legales, ya que cualquier desviación, por mínima que sea, puede resultar en la invalidez de la sentencia que valide el acuerdo suscrito por las partes.

Surge del expediente ante nuestra consideración que el 31 de mayo de 2024, las partes suscribieron un pagaré con garantía hipotecaria por la cantidad de setenta y seis mil quinientos dólares ($76,500.00), incluyendo los intereses y cargos vencederos el 31 de julio de 2024. En la misma fecha otorgaron y juramentaron una *Sentencia por Consentimiento* ante un notario público. En ésta, el Peticionario reconoció la deuda antes mencionada, además, acordó el pago de un cargo en caso de incumplimiento y radicación de un pleito ante el tribunal, equivalente al diez por el ciento (10%) del préstamo. Las cláusulas específicamente disponen que Hemingway pagará el capital del préstamo, más la tarifa por el incumplimiento, para un total de

ochenta y cuatro mil dólares ($84,000.00). Adicional a ello, le debía asignar y transferir al Recurrido un interés propietario equivalente a la mayoría de las acciones del demandado.

Conforme a lo solicitado, el TPI emitió *Sentencia* y ordenó a que, en virtud del incumplimiento, el señor Reynolds debía otorgar cualquier documento público o privado que fuera necesario para transferir su interés propietario –**no la mayoría como fue pactado**– al Recurrido, en calidad del pago de la hipoteca.

Así pues, el Peticionario presentó su *Moción de Relevo de Sentencia* en la cual planteó que el dictamen era nulo, toda vez que la cláusula del pago de la deuda, según pactado, sobrepasó el importe de la responsabilidad convenida. **Entiéndase, que según surge del acuerdo, este adeudaba la totalidad de los ochenta y cuatro mil dólares ($84,000.00), más la transferencia del interés propietario equivalente a la mayoría de las acciones**. De una mirada al expediente electrónico surge que el Peticionario presentó evidencia de la tasación de la propiedad, estimada en cuatro punto seis millones de dólares ($4,600,000.00).[4] Es decir, un simple cómputo matemático conduce a la conclusión de que se le concede al Recurrido un cantidad que sobrepasa la suma adeudada, conforme detallada en el pagaré garantizado por la hipoteca y en la *Sentencia por Consentimiento*.

Luego del análisis de estos planteamientos, concluimos que la *Sentencia por Consentimiento* de su faz es nula, pues la forma de pago de la deuda pactada sobrepasa el importe de la responsabilidad del Peticionario. Ello a raíz de que en el acuerdo de pago se imponen dos (2) modos de liquidar la deuda, lo cual, excede el valor de los $76,500.00, más los intereses pactados. A pesar de que en el documento suscrito ante notario no consta un porcentaje determinado de lo que constituye el aludido interés propietario del Peticionario, el lenguaje impone una carga desproporcionada al monto de la deuda o responsabilidad de pago que éste tiene.

---

[4] *Véase*, <u>SUMAC TPI</u>, entrada núm. 61, anejo 2.

Conforme a lo anteriormente discutido, para sostener la validez de la *Sentencia por Consentimiento* el TPI debió analizar si el documento en el cual se fundamentó su dictamen cumplió con los requisitos de la Regla 35.4 de Procedimiento Civil, *supra*. Ese es el paso previo que se debe efectuar en este tipo de casos, pues los tribunales vienen compelidos a asegurarse que las disposiciones de la aludida Regla se cumplieron rigurosamente. González v. López Quiñones, *supra*, pág. 853. En este caso, según adelantamos, la *Sentencia por Consentimiento* no se atemperó a las disposiciones reglamentarias que regulan este tipo de mecanismo procesal.

Por otro lado, vemos que la *Sentencia* dictada se apartó de lo acordado por las partes, imponiendo la transferencia de la totalidad del interés propietario como pago ante el incumplimiento del Peticionario. Recordemos que la más mínima desviación puede invalidar una sentencia por consentimiento. Así pues, resulta evidente que el foro a *quo* estaba impedido de modificar el modo de la liquidación de la deuda. Simplemente, lo correspondiente era que el TPI –entre otras cosas– examinara el acuerdo suscrito entre las partes y se asegurara de si, en efecto, el importe de la obligación de pago conforme establecido excedía la cuantía adeudada. Tal análisis era indispensable para salvaguardar los derechos de las partes, garantizar la economía procesal y no vulnerar la normativa atinente a la emisión de dictámenes por consentimiento. Por consiguiente, existió un asunto que no fue analizado por el foro de instancia y que precisamente contraviene lo dispuesto en las Reglas de Procedimiento Civil.

A tenor con el análisis que antecede, corresponde revocar la determinación recurrida en la que se declaró "No Ha Lugar" a la *Moción de Relevo de Sentencia*. Teniendo como norte la economía procesal, concluimos que la controversia planteada amerita que el caso sea devuelto al foro primario para que se dilucide mediante un pleito ordinario de cobro de dinero y ejecución de hipoteca. *Véase*, Cuevas Segarra, op. cit., pág. 1037.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral de la presente *Sentencia*, se *expide* el auto de *certiorari* presentado y se *revoca* la *Orden* recurrida.

En consecuencia, se devuelve el caso al TPI para la continuación de los procedimientos por la vía ordinaria de cobro de dinero y ejecución de hipoteca.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones